United States District Court
Southern District of Texas
**ENTERED**
May 28, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| PEGGY ANN FULFORD, a/k/a | § | CRIMINAL ACTION NO. 16-551 |
| PEGGY KING; a/k/a PEGGY | § | |
| WILLIAMS; a/k/a PEGGY BARARD; | § | |
| a/k/a PEGGY SIMPSON; a/k/a | § | |
| PEGGY RIVERS; a/k/a DEVON | § | |
| COLE; a/k/a DEVON BARARD | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Peggy Ann Fulford, a federal prisoner, filed a *pro se* motion for a compassionate release pursuant to 18 U.S.C. § 3582(C)(1)(A). (Docket Entry No. 77.)

Having considered the motion, the record, matters of public record, and the applicable law, the Court **DENIES** the motion for a compassionate release for the reasons shown below.

### I. BACKGROUND AND CLAIMS

Defendant is a 62-year-old female prisoner currently confined at the Bureau of Prisons ("BOP") Aliceville FCI in Alabama. Defendant pleaded guilty to one count of interstate transportation of stolen property in violation of 18 U.S.C. § 2314. The Court sentenced her to a 120-month term of imprisonment followed by a three-year term of supervised release, and ordered restitution of approximately $5.8 million. (Docket Entry No. 59.) Judgment was entered on November 13, 2018. No appeal was taken. Although

defendant claims she has served three years of the 120-month sentence imposed by this Court, her actual time served is 2 years and 7 months, or approximately 25% of her full sentence. (Docket Entry No. 73-5, p. 7.)

As extraordinary and compelling reasons for a compassionate release, defendant argues that her elderly and infirm father needs her to reside with him at his house to take care of him. She further argues that she has been completely rehabilitated by her 2 years and 7 months spent in prison and has successfully completed educational classes and prison work. Defendant argues that a ten-year sentence at her age was in itself an extraordinary event, and that her sentence should be reduced to time served because of COVID-19.

## II. LEGAL STANDARDS

Defendant brings this motion for a sentence reduction and compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court in its discretion to modify a sentence under certain circumstances. Under the current version of the statute, a motion may be made by either the Director of the BOP or by a prisoner after the prisoner has fully exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Compassionate release provisions under section 3582(c)(1)(A) authorize a court to modify a defendant's term of imprisonment if the court finds that "extraordinary and compelling reasons warrant such a reduction."

The Sentencing Commission addressed in a policy statement what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. *See*

2

U.S.S.G. § 1B1.13. However, the Fifth Circuit Court of Appeals recently held that the U.S. Sentencing Commission's compassionate release policy statement does not bind district courts in considering motions brought by prisoners under section 3582(C)(1)(A). *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. April 7, 2021). Accordingly, the district court is free to determine whether a defendant's particular medical condition or other situation constitutes extraordinary and compelling reasons for a compassionate release. *See United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. Sept. 4, 2020); *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011) ("[T]he decision whether to ultimately grant a modification is left to the sound discretion of the trial court."). A defendant in a section 3582(c)(1)(A) motion has the burden to establish that relief is warranted in his or her case.

The court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. The court must base its decision on "a thorough factual record" and "must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a).

Thus, a defendant may be eligible for a compassionate release under section 3582(c)(1)(A) if the court finds "extraordinary and compelling reasons" warrant a sentence reduction and that the reduction would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).

### III.  ANALYSIS

A.    <u>Exhaustion</u>

Defendant submitted documents showing that she exhausted her administrative remedies prior to filing the instant motion.  The Court finds that defendant exhausted her administrative remedies and that she may proceed on the merits of her motion.

B.    <u>Extraordinary and Compelling Reasons</u>

As her primary extraordinary and compelling reason for entitlement to a compassionate release, defendant claims that her elderly father is unable to take care of himself and she needs to live with him to provide care.

The issue regarding defendant's father is not new, and existed prior to defendant's sentencing in this case. Defendant was quoted in the August 2018 PSR prepared in this case as stating her father had a stroke in 2015 and was showing early signs of dementia.  She had moved back home to her father's house in New Orleans to take care of him.  (Docket Entry No. 42, ¶ 294.)  For several months prior to her arrest, defendant's father paid her $1,500 a month to assist him in cleaning the house, cooking him meals, running his errands, and taking him to medical appointments. *Id*. at ¶ 316.  According to a probation officer who

visited the home in January 2018, the father "mostly remained in his bed as he had difficulty moving around on his own." *Id.* at ¶ 303. Defendant reportedly returned to residing with him in New Orleans following her pretrial release.

However, when New Orleans probation officers visited the house in October 2018 attempting to locate defendant, the father stated that defendant had not "lived there for months" and her whereabouts were unknown. *Id.* at ¶¶ 5, 316. The Government emphasized at sentencing that defendant had moved out of her father's house for at least six months in 2018 without notifying court personnel of her new address. (Docket Entry No. 64, p. 11.)

Thus, defendant voluntarily ceased providing care for her father in mid-2018 prior to her sentencing. She left him on his own, provided him no information as to her whereabouts, and did not return. She provides no information in this motion as to her father's current living or care arrangements and his medical condition. The short synopsis of his medical visits supplied by defendant ends as of March 11, 2020. (Docket Entry No. 77, Exhibit B.) Moreover, no information is given as to what efforts she or her four adult sons have made to arrange home health care or care in a residential facility for their father/grandfather.

Additionally, the Court notes that the Government reported its suspicions in September 2018 that defendant was financially defrauding her father. The father had reportedly written checks to defendant earmarked for "attorney's fees" and "legal expenses,"

even though defendant was represented by court-appointed counsel. (Docket Entry No. 37, p. 5.)

For these reasons, the Court does not find that defendant's father's age and infirmity constitute extraordinary and compelling reasons warranting a 75% reduction of the sentence imposed by this Court.

Further, defendant does not show an increased risk of serious illness or death from COVID-19 due to her confinement at Aliceville FCI. The facility currently reports having no prisoners with positive COVID-19 test results and no reported inmate deaths. A total of 102 prisoners have recovered from COVID-19 infections at the facility.[1] Although defendant expresses legitimate and common concerns regarding COVID-19, she does not establish that her facility cannot manage an outbreak or that the facility could not treat her if she were to contract the virus. Moreover, the BOP reports that it is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to ensure the BOP remains prepared to receive and administer the COVID-19 vaccine as it is made available. The BOP has received 184,582 doses and administered 184,201 doses of the COVID-19 vaccine as of May 28, 2021.[2] Defendant does not establish that her current confinement gives rise to extraordinary and compelling reasons for granting a

---

[1]*See* https://www.bop.gov/coronavirus/ (accessed on May 28, 2021).

[2]*See* https://www.bop.gov/coronavirus/ "COVID-19 Vaccine Implementation" (accessed on May 28, 2021).

compassionate release.  This Court has, at great length, expressed concerns with the potential for COVID-19 infections in other prisons and in immigration detention facilities. In this case, however, defendant does not show that her facility has failed to take appropriate precautions or is in any other way remiss in its efforts to address COVID-19.  Nor does she show that her within-guidelines 120-month sentence, educational classes, and prison work history are extraordinary and compelling reasons for reducing her term of imprisonment by 75%.

No extraordinary and compelling reasons for a compassionate release are shown by defendant in this motion.  Even assuming extraordinary and compelling reasons were shown, the applicable sentencing factors under 18 U.S.C. § 3553(a) would weigh heavily against the granting of relief, as shown below.

C.     Sentencing Factors

Defendant does not demonstrate that the applicable factors set forth under 18 U.S.C. § 3553(a) weigh in favor of an early release. These factors include, as applicable:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense.

*United States v. Chambliss*, 948 F.3d 691, 693 n.3 (5th Cir. 2020); 18 U.S.C. § 3553(a).

7

From 2001 until some point in 2014, defendant obtained and misappropriated millions of dollars entrusted to her by at least four professional athletes.   She falsely told them she was a Harvard Law School and Harvard Business School graduate who had made millions of dollars through successful investments.   She agreed to provide free money management and investment services and to use their money exclusively to pay their bills, including their income tax obligations, and to make retirement investments for them.

Defendant's promises were a criminal sham.  She took their money and diverted it for her own use, purchasing expensive cars and real estate in multiple locations and creating a lavish lifestyle for herself.  Her victims found themselves impoverished and stranded, unable to buy groceries or put gas in their cars.  Defendant's criminal actions left her victims and their families financially destitute.   Incredibly, defendant continued her fraudulent activities even after pleading guilty in this case; indeed, one victim testified at sentencing that defendant had solicited funds from him for a non-existent investment just a few months before her sentencing.

The Government also brought forward evidence showing that defendant had perjured herself before a New Orleans federal magistrate judge in December 2016.  She testified in open court to having only $4,500.00; three days later, she withdrew $22,000.00 in the form of a cashier's check from a bank account containing $33,000.00, and gave it to her sons.

This Court imposed the maximum sentence under the guidelines due to the financial ruination defendant's on-going criminal conduct caused her victims and their families, all

8

the while diverting their money to pay for her own personal extravagances.  Following her guilty plea, defendant continued her criminal activities, apparently stopping only when sentenced and imprisoned.  The Court is unpersuaded by defendant's claims of being "completely rehabilitated" after serving one-quarter of the sentenced imposed by this Court.

Consideration of the applicable sentencing factors leads this Court to conclude that relief under 18 U.S.C. § 3582(C)(1)(A) is not merited in this case. The Court finds that reducing defendant's sentence to time served would not promote respect for the law, provide just punishment, or afford adequate deterrence.

## IV.  CONCLUSION

Defendant's motion for a compassionate release under 18 U.S.C. § 3582(C)(1)(A) (Docket Entry No. 77) is **DENIED WITH PREJUDICE**.

Signed at Houston, Texas, on this the _____ day of May, 2021.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE